UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOWLING PROPRIETORS' ASSOCIATION
OF AMERICA,

       Plaintiff,

vs.

Case No. 08-CV-11549
HON. GEORGE CARAM STEEH

GREATER MICHIGAN BOWLING
PROPRIETORS' ASSOCIATION, and
SCOTT BENNETT,

       Defendants.

_____/

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#12)

Defendants Greater Michigan Bowling Proprietors' Association of America (GMBPA) and Scott Bennett move for summary judgment of plaintiff Bowling Proprietors' Association of America's (BPAA) federal claims of trademark infringement, 15 U.S.C. § 1114(1), unfair competition, 15 U.S.C. § 1125(a)(1)(A), false advertising, 15 U.S.C. § 1125(a)(1)(B), and trademark dilution, 15 U.S.C. § 1125(c)(1) and (2), and state law claims of common law unfair competition, violation of Michigan's Uniform Trade Practices Act, M.C.L. § 445.903, unjust enrichment, and claim for an accounting. A hearing on the motion was held on July 30, 2008. For the reasons set forth below, defendants' motion for summary judgment will be DENIED.

**I. Background**

BPAA is a non-profit national association whose members are individuals and

businesses that operate bowling lanes.  BPAA has state and local affiliates throughout the United States.  BPAA's Michigan affiliate is the Bowling Centers Association of Michigan (BCAM).  BPAA allegedly owns a federal design mark which incorporates its name "Bowling Proprietors' Association of America, Inc.," a federal trademark for "International Bowl Expo," and a federal trademark for a design logo which incorporates the name "International Bowl Expo."  The design mark expressly provides: "NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE 'BOWLING PROPRIETORS' ASSOCIATION' AND 'AMERICA, INC.' APART FROM THE MARK AS SHOWN."

Defendant Bennett was Michigan affiliate BCAM's Executive director for 17 years when, in September 2007, Bennett and former BCAM officer James Teuber formed defendant GMBPA.  Bennett and GMBPA began promoting a "Great Lakes Bowl-Expo," and registered the domain name www.bowl-expo.com.  BPAA's several claims as alleged in its April 10, 2008 Complaint are premised on GMBPA's and Bennett's unauthorized use of the terms "Bowling Proprietors' Association" and "Bowl-Expo."

On May 1, 2008, BPAA moved for a preliminary injunction.  The court held a May 14, 2008 status conference in an attempt to resolve the matter.  Following a second May 29, 2008 telephone conference, the parties informed the court that they were unable to reach an agreement, and the court set a July 30, 2008 hearing date for BPAA's motion for a preliminary injunction.  GMBPA and Bennett filed the instant motion for summary judgment on June 23, 2008 along with their response to BPAA's motion for a preliminary injunction.  The court entered a July 7, 2008 Stipulated Order withdrawing BPAA's motion for a preliminary injunction premised on the agreement that GMBPA and Bennett would not use the names "Great Lakes Bowl-Expo" or "Greater Michigan Bowling Proprietor's

Association" during the pendency of this lawsuit. On July 8, 2008, the court denied BPAA's motion to postpone its response to the motion for summary judgment until after discovery closes on October 30, 2008, recognizing that BPAA may argue for the denial of the motion for summary judgment based on the need for further discovery.

## II. Motion for Summary Judgment

Defendants GMBPA and Bennett move for summary judgment arguing the terms "bowling proprietors association" and "bowl expo" are generic, descriptive phrases in which BPAA cannot claim a protected legal interest. Defendants continue that they have not used the terms "Greater Michigan Bowling Proprietor's Association" or "Great Lakes Bowl-Expo" in a manner which would entitle BPAA to recover damages. Defendants further assert that Michigan law does not recognize a common law claim of dilution.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968). See also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252). If the non-movant fails to meet its burden of coming forward with evidence showing that a reasonable factual dispute exists, summary judgment is proper "as long as the plaintiff has had a full opportunity to conduct discovery." White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 256).

The Lanham Act is intended to make "actionable the deceptive and misleading use of marks" and "to protect persons engaged in . . . commerce against unfair competition." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992) (citing 15 U.S.C. § 1127). 15 U.S.C. § 1125(a) of the Lanham Act protects qualifying unregistered marks. Id. at 768. Marks are generally classified into categories of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. Id. at 768. Generic marks are not registrable as trademarks. Id. at 768. "A generic term can never function as a trademark." Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 404 (6th Cir. 2002).

"On the other hand a term that is 'merely descriptive' may be used as a trademark

if it has acquired secondary meaning." Id. "If a mark's primary significance is to describe a type of product rather than the producer, it is generic and not a valid trademark." Id. "The 'test for genericness is whether the relevant public perceives the term primarily as the designation of the article." Id. The plaintiff bears the burden of proving that "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." DeGidio v. West Group Corp., 355 F.3d 506, 513 (6th Cir. 2004) (quoting Inwood Labs, Inc. v. Ives Labs., 456 U.S. 844, 851 n.11 (1982)).

Defendants stress the generic quality of the components of BPAA's claimed marks "Bowling Proprietors' Association of America, Inc." and "International Bowl Expo," that is, "bowling," "proprietor," "association," "bowling proprietor," "bowling proprietor association," and "bowl expo." The "anti-dissection rule," however, cautions against breaking up marks into their component parts, the rationale being "that the commercial impression of a composite trademark on an ordinary prospective buyer is created by the mark as a whole, not by its component parts." Autozone, Inc. v. Tandy Corp., 373 F.3d 786, 795 (6th Cir. 2004) (quoting Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:41, at 23-123 (2003)). Defendants concede that the bowling trade uses the term "bowling proprietors association" descriptively, at least when capitalized as "Bowling Proprietors Association." Construing the pleadings and evidence in a light most favorable to non-movant BPAA, and reading the marks "Bowling Proprietors' Association of America, Inc." and "International Bowl Expo" as a whole, it remains possible for BPAA to develop a factual record demonstrating that the subject marks are descriptive marks that acquired secondary meaning, identifying BPAA as their source, and not merely generic terms.

Nartron Corp., 305 F.3d at 404; DeGidio, 355 F.3d at 513; McLean, 224 F.3d at 800; White's Landing, 29 F.3d at 231.

Whether BPAA's marks have acquired secondary meaning involves an evaluation of seven factors: (1) direct customer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying. DeGidio, 355 F.3d at 513. If a mark has acquired secondary meaning, its unauthorized use is actionable if the use is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)(A). The existence of a likelihood of confusion depends on consideration of eight factors: (1) the strength of the plaintiff's mark; (2) the relatedness of the services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. Champions Gold Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1116 (6th Cir. 1996). No one factor is controlling. Id. "[T]he ultimate question [is] whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." Id. at 1116 (internal quotation omitted).

Defendants advance relatively strong arguments against finding that the mark "Bowling Proprietors' Association of America, Inc." has acquired secondary meaning in the minds of the public: other organizations describe themselves as "bowling proprietors associations" using names such as the "Upper Peninsula Bowling Proprietors Association"; BPAA affiliates such as BCAM are not restricted under their "TEAM" contracts with BPAA in the use of the terms "bowling proprietors association"; BPAA's registered design mark

incorporating its name "Bowling Proprietors' Association of America, Inc." expressly states that "NO CLAIM [IS BEING] MADE TO THE EXCLUSIVE RIGHT TO USE 'BOWLING PROPRIETORS' ASSOCIATION' AND 'AMERICA, INC.' APART FROM THE MARK AS SHOWN." Defendants argument that BPAA has failed to proffer admissible evidence of secondary meaning or likelihood of confusion ignores the complexity of these issues and BPAA's very limited opportunity to conduct discovery prior to filing its timely response brief on July 17, 2008. DeGidio, 355 F.3d at 513; Champions Gold Club, 78 F.3d at 1116; White's Landing, 29 F.3d at 231. Defendants' argument that BPAA's registered mark "International Bowl Expo" includes the geographical modifier "International" does not address whether the capitalized term "Bowl Expo" has itself acquired secondary meaning. Construing the pleadings and evidence in a light most favorable to BPAA and BPAA's limited opportunity to conduct discovery, it remains for BPAA to develop a factual record demonstrating that BPAA's subject marks acquired secondary meaning in the marketplace, and that relevant consumers were likely to believe that the products and services offered by defendants GMBPA and Bennett are affiliated with plaintiff BPAA in some way. DeGidio, 355 F.3d at 513; Champions Gold Club, 78 F.3d at 1116; McLean, 224 F.3d at 800; White's Landing, 29 F.3d at 231. The issue of resulting damages likewise remains subject to further factual development.[1] Id.

Defendants appear to be correct in their assertion that Michigan law does not appear to recognize a common law claim of trademark dilution. See Aero-Motive Co. v. U.S.

---

[1] BPAA conceded at the hearing that it cannot on the record as developed to date support a claim for damages for the defendants' alleged unauthorized use of the term "Bowl Expo." Defendants conceded at the hearing that issues related to use of the term "Bowl Expo" were most likely moot.

Aeromotive, Inc., 922 F.Supp. 29, 47 (W.D. Mich. 1996) (stating that "Michigan . . . has no common law cause of action for trademark dilution," citing Wynn Oil Co. v. American Way Service Corp., 736 F.Supp. 746, 756 (E.D. Mich. 1990), aff'd in part, 943 F.2d 595 (6th Cir. 1991) (Taylor, J.)). But see Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1105 n.1 (6th Cir. 1991) (recognizing a Michigan common law claim for trademark dilution). Plaintiff's Count of "Common Law Trademark Infringement and Unfair Competition" under Michigan law does not, however, allege a specific claim of trademark dilution. The court finds that BPAA has simply not alleged trademark dilution under Michigan law, and therefore summary judgment of the claim is unwarranted.

### III. Conclusion

Defendants GMBPA's and Bennett's motion for summary judgment is hereby DENIED without prejudice.

SO ORDERED.

Dated: November 3, 2008

                                         s/George Caram Steeh
                                         GEORGE CARAM STEEH
                                         UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 3, 2008, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk